AO 106 (Rev. 04/10) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Subject Devices as described in Attachment A.

Case No. 24-MJ- 4105

## APPLICATION FOR A SEARCH WARRANT

I, CHRISTINA PEKLAK, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property located in the Western District of New York or elsewhere *(identify the person or describe the property to be searched and give its location)*:  The Subject Devices as described in Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

*See* Attachment B, Information to be Seized, which is incorporated by reference as if fully set forth herein, all of which are evidence, contraband, fruits, and instrumentalities of violations of <u>Title 18, United States Code, Sections 2251(a); 2252A(a)(2)(A); and 2252A(a)(5)(B).</u>

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. §§ <u>2251(a); 2252A(a)(2)(A); and 2252A(a)(5)(B).</u>

The application is based on these facts:  *See* attached affidavit.
- ☐ continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Christina Peklak
*Printed name and title*

**Application submitted electronically by email in .pdf format and attested to me and before me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3).**

Date:  ___July 29 , 2024___

_____
*Judge's signature*

City and state:  _Rochester, New York_     _Marian W. Payson, U.S. Magistrate Judge_

## ATTACHMENT A: THE SUBJECT DEVICES

The SUBJECT DEVICES to be searched are in the custody of the FBI.  They are described and depicted as follows:

    a.      Device #6: SanDisk Ultra USB 3.0 32GB stamped with BM170325710D;



    b.      Device #7: Seagate Game Drive for PS4 with serial number NZ0CB4GC;



    c.  Device #8: UnionSine External Hard Drive with serial number US2302008446;



## **ATTACHMENT B**

## **ITEMS TO BE SEARCHED AND SEIZED**

1. Evidence, in any form, of violations of 18 U.S.C. §§ 2251(a) (production of child pornography); 2252A(a)(2)(A) (receipt and distribution of child pornography); and 2252A(a)(5)(B) (possession or access with intent to view, or view child pornography).

2. Images of child pornography and files containing images of child pornography;

3. Information, correspondence, communications, and other materials constituting evidence of, or pertaining to, the sexual exploitation of minors;

4. Any and all records, documents, e-mails, telephone numbers, text messages, correspondence, communications, images, internet search history, or other information, which evince a sexual interest in minors or child exploitation;

5. Records and information relating to the existence of internet sites, social media applications, file sharing applications, or chat applications, related to child pornography or a sexual interest in children; and

6. Information which evinces ownership or use of any social media accounts, financial accounts, email accounts, computers, cell phones, or other devices, to include usernames, passwords, location information, IP information, etc.

**(Final Version 01/2024)**
## ADDENDUM TO SEARCH WARRANT
## SEARCH OF COMPUTERS

1.  The computer or electronic media search authorized by this warrant shall be completed within 60 days from the date of the warrant unless, for good cause demonstrated, such date is extended by Order of this Court.  *United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020).

2.  In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology to search only for files, documents or other electronically stored information which are identified in the warrant itself.

3.  Should the government not locate any of the items specified in the warrant (or other fruits, contraband, instrumentalities, or property subject to forfeiture) within the authorized search period (including any extensions granted), the government shall return the computer or electronic media to the owner.

4.  In any circumstance not covered by paragraph three (3) above, upon completion of the search, the government, upon request of the owner of the computer, shall promptly return to the owner of the computer copies of all files and documents requested and specified by the owner, excluding any items or files seized pursuant to the warrant or other fruits, contraband, instrumentalities or property subject to forfeiture.

5.  If electronically stored data or documents have been identified by the government pursuant to this warrant, or other fruits, contraband, instrumentalities or property subject to forfeiture, the government may retain the original hard drive or other data storage mechanism pending further order of this Court. The retention of the original hard drive or other data storage mechanism does not relieve the government of its obligation to return to the owner of the computer files, documents or other electronically stored information identified in paragraph (4) above.

6.  Nothing in this warrant shall limit or prevent the government from retaining the computer or electronic media as fruits, contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein. Nothing in this warrant shall limit or prevent the owner of the computer or electronic media from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

7.  Should there be a dispute or question over ownership of any computer or any electronically stored data or documents stored therein, the government shall promptly notify this Court so that such dispute or question can be resolved.

<u>**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**</u>

STATE OF NEW YORK  )               24-MJ-4105
COUNTY OF MONROE  )     SS:
CITY OF ROCHESTER   )

I, CHRISTINA PEKLAK, being duly sworn, depose and state:

1.      I have been a Special Agent of the FBI since 2007, and am currently assigned to the Corning, New York, Resident Agency. As a Special Agent of the FBI, I am responsible for investigating the production, distribution, receipt, and possession of child pornography. I have been involved in hundreds of child pornography and child exploitation investigations and have seen thousands of images of child pornography as defined by 18 U.S.C. § 2256(8).

2.      I have been involved in an investigation of RYAN M. NEWMAN involving the production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). The investigation led to NEWMAN's arrest on July 12, 2024. The allegations involve the ongoing sexual abuse of an identified minor, Victim 1. I am fully familiar with the evidence that supports the above referenced charges and prepared Criminal Complaint No. 24-MJ4093-MWP, which is pending before this Court. The filed Criminal Complaint is attached as EXHIBIT 1. The factual allegations contained in the Criminal Complaint are incorporated as if fully set forth in this affidavit.

3.      On July 23, 2024, this Court approved a search and seizure warrant No. 24-MJ-4097, which permitted the search of devices and internet accounts belonging to NEWMAN. The signed warrant is attached as EXHIBIT 2, and the factual allegations and probable cause contained in EXHIBIT 2 are also incorporated as if fully set forth in this affidavit.

4.      I submit this affidavit in support of a warrant to search additional devices recently identified through this investigation (SUBJECT DEVICES) which are described in Attachment A.

5.      The SUBJECT DEVICES are in the custody of the FBI in the Western District of New York and are therefore subject to search pursuant to Rule 41 of the Federal Rules of Criminal Procedure. They include:

   a.  Device #6: SanDisk Ultra USB 3.0 32GB stamped with BM170325710D;

   b.  Device #7: Seagate Game Drive for PS4 with serial number NZ0CB4GC; and

   c.  Device #8: UnionSine External Hard Drive with serial number US2302008446;

6.      The evidence to be searched for and seized from each of the above-described devices is described in Attachment B.

7.      This affidavit is based on my personal knowledge and observations, my training and experience, conversations that I have had with other law enforcement officers and witnesses, and my review of documents, reports, records, and digital evidence gathered through the investigation of this case. Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth the facts that I believe are relevant to establish probable cause to support the requested search warrant.

## Probable Cause for the SUBJECT DEVICES

8.      As explained in Exhibit 1, NEWMAN is a Level 3 registered sex offender with a 2012 conviction for child pornography crimes in New York State. The current investigation

has revealed that NEWMAN was involved in the ongoing sexual abuse and production of child pornography of Victim 1, a 10 to 11-year-old female between 2023 and 2024, and had actively received, distributed, and possessed other child pornography since at least 2021.

9.    On July 24, 2024, I spoke with Witness 1 and Witness 1's mother, Witness 3. Witness 1 explained that she was in the process of collecting and removing NEWMAN's belongings from the home where she and the children currently reside and where NEWMAN lived prior to his arrest. Witness 3 has been assisting Witness 1 with this endeavor. On either July 21, 2024, or July 22, 2024, Witness 3 located a box that contained some of NEWMAN's clothing, some paperwork belonging to NEWMAN, and Device #6. The paperwork was dated December 1, 2015, and was related to NEWMAN's release from prison.

10.    Witness 1 also provided me with two external hard drives (Device #7 and Device #8) she believes belong to NEWMAN. Witness 1 found Device #7 on the floor of one of the downstairs rooms, and she believes that it is possible one of her younger children found it in a box somewhere and placed it on the floor. Device #7 has a tag on the bottom stating, "Game Drive for PS4," indicating it was likely used in conjunction with a Play Station (PS) gaming system. As of July 24, 2024, Device #8 was plugged into NEWMAN's PS5, which also resided on the first floor of the residence. Witness 1 lives in the home with her children and indicated that each of the SUBJECT DEVICES belong to NEWMAN, who resided in the home prior to his arrest in this case.

11.    Each of the devices has remained in the custody of the FBI since they were seized. Based on NEWMAN's history, the information above and in Exhibits 1 and 2, and my training and experience, I believe that the SUBJECT DEVICES are likely contain

3

evidence, fruits and instrumentalities of violations of 18 U.S.C. §§ 2251(a); 22252A(a)(2)A); and 2252A(a)(5)(B), as described in Attachment B.

12.     This is because individuals like NEWMAN, who have a demonstrated history of child pornography activity, often use multiple devices to produce, receive, possess, and distribute child pornography. Despite individuals' attempt to delete contraband (or belief that they have deleted it), remnants of child pornography, such as file titles can often be located through full forensic examinations.

## CONCLUSION

13.     Based upon the forgoing, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B) as described in Attachment B, are currently located within the SUBJECT DEVICES as described in Attachment A.

CHRISTINA PEKLAK
FBI Special Agent

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 29, 2024.

MARIAN W. PAYSON
United States Magistrate Judge

5

# EXHIBIT 1

AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the

### Western District of New York

United States of America

v.

Case No. 24-MJ- 4093

**RYAN M. NEWMAN,**

*Defendant*

### CRIMINAL COMPLAINT

I, <u>CHRISTINA T. PEKLAK</u>, the complainant in this case, state that the following is true to the best of my knowledge and belief: That from approximately May 28, 2021, through July 3, 2024, in the Western District of New York and elsewhere, the defendant, RYAN M. NEWMAN:

(1) did knowingly employ, use, persuade, induce, entice and coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which depictions were produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, and which depictions were transported in and affecting interstate and foreign commerce, including by computer, in violation of 18 U.S.C. § 2251(a);

(2) did knowingly distribute and receive child pornography that had been transported in and affecting interstate and foreign commerce, including by computer, in violation of 18 U.S.C. § 2252A(a)(2)(A); and

(3) did knowingly possess material that contained images of child pornography that had been transported using a means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, including by computer, in violation of 18 U.S.C. § 2252A(a)(5)(B).

This Criminal Complaint is based on these facts: **SEE ATTACHED AFFIDAVIT OF FBI SPECIAL AGENT CHRISTINA T. PEKLAK.**

☒ Continued on the attached sheet.

CHRISTINA T. PEKLAK, FBI

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: ___July 11 , 2024___

*Judge's signature*

City and State: __Rochester, New York__

MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF MONROE    )        SS:                                24-MJ-4093
CITY OF ROCHESTER    )

     I, Christina T. Peklak, having been duly sworn, depose and state:

     1.    I have been a Special Agent of the FBI since 2007, and am currently assigned to the Corning, New York, Resident Agency.  As a Special Agent of the FBI, I am responsible for investigating the production, distribution, receipt, and possession of child pornography. I have been involved in hundreds of child pornography and child exploitation investigations and have seen thousands of images of child pornography as defined by 18 U.S.C. § 2256(8).

     2.    I submit this affidavit in support of a criminal complaint charging RYAN M. NEWMAN with the production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B).

     3.    The information contained in this affidavit is based on my personal knowledge and investigation of this matter, my training and experience, conversations with other law enforcement officers and witnesses, and my review of documents, reports, and records gathered through the investigation of this case.

     4.    Because this affidavit is submitted for the limited purpose of establishing probable cause to support a criminal complaint, I have not included every fact known to me as a result of this investigation. Rather, I have set forth the facts that I believe are relevant to establish probable cause to believe that NEWMAN knowingly violated 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B).

## NYSP INVESTIGATION (2021-2022)

5.     On May 31, 2021, the National Center for Missing and Exploited Children (NCMEC) received a notification from the social media and internet service provider Snapchat, that an individual with username "augustrushed123" associated with the email address "musicalmuffin7.0@gmail.com," uploaded a file containing child pornography to the Snapchat platform on May 28, 2021. This information was forwarded to the New York State Police (NYSP).  The NYSP viewed the file, which it described as a 1 minute and 52 second video clip depicting a pre-pubescent female child licking the breasts and vaginal area of a nude female in a bathtub and on a bed.  Based on my training and experience, I believe this video constitutes child pornography as defined by 18 U.S.C. § 2256(8).

6.     A subpoena was issued for the subscriber of the IP address that uploaded the child pornography video. The subpoena response indicated the subscriber was an individual "K.B." who had been living at 178 West Pulteney Street, Apt. 102, Corning, NY 14830. Open-source searches identified RYAN NEWMAN, a Level 3 registered sex offender, as another occupant of the residence. In New York, a Level 3 registered sex offender is someone that a judge has determined is at a high risk of re-offending and is a threat to public safety.

7.     According to his Sex Offender Registration, NEWMAN was convicted in 2012 for a violation of New York State Penal Law § 263.15 (Promoting a Sexual Performance by a Child Less than 17 Years of Age) and was sentenced to serve six months incarceration followed by a ten-year term of probation. Records reflect that NEWMAN violated his probation and was resentenced to serve a prison term in the New York State Department of Corrections.

8.    Based on the above, the NYSP obtained a warrant to search NEWMAN's person, residence, and vehicle.  The warrant was executed on March 9, 2022.

9.    Pursuant to the warrant, the NYSP seized NEWMAN's Samsung cellular phone from his person, and other devices from his home.[1]  The Samsung phone was manufactured outside of New York State and outside of the United States and has therefore travelled in interstate and foreign commerce.

10.    The NYSP conducted forensic examinations of the Samsung phone and other devices, which revealed multiple images of child pornography.  In particular, the Samsung was found to contain at least eleven images of child pornography as defined by 18 U.S.C. § 2256(8), some of which have been confirmed by the NCMEC as depicting known children. Four of the files as described by the NYSP are as follows:

     a.    Image #1: An image depicting a pre-pubescent female child lying on a bed, digitally penetrating her nude vagina.

     b.    Image #2: An image depicting at least one pre-pubescent female child in a bathtub holding a male's penis.

     c.    Image #3: An image depicting a pre-pubescent female child lying on a bed, digitally penetrating her nude vagina.

     d.    Image #4: An image depicting two minor teenaged males, exposing and touching their penises.

11.    The Samsung also contained evidence of NEWMAN's ownership and use of the phone, such as credit card information containing NEWMAN's name, and messages in which NEWMAN referenced his "past" and concerns about being around "kids," in reference

---

[1] Devices from NEWMAN's home also contained evidence of child pornography crimes, however, only the contents of the Samsung are described for the purposes of this complaint.

to his prior child pornography conviction.  In addition, the device user/owner's name on the phone was listed as "Ryan Newman."

12.    Forensic analysis of the Samsung also revealed web bookmark artifacts, showing the user's bookmark history. A bookmark is a place holder for a web page that allows a user to quickly access that page instead of having to search for it. Many of the bookmarks on NEWMAN's phone related to "Imgsrc.ru" and a title "Cuteteenyoung@iMGSRC.RU." Imgsrc.ru is a website that is often used to send and receive child pornography. Analysis also revealed the use of Mega.nz, which is another internet platform that is used to receive, distribute and possess child pornography.  Communications were discovered in which the user of the device stated: "What ages for teens?" to which another person replied: "All," indicating that the user actively communicated with others to exchange child pornography. Dictionary artifacts, which are typed words that were frequently used and recorded by the device were also recovered.  They included: "#teenagebra," "Imgsrc.ru," "toddlers," "traffiking," "underage," and "virgin." The analysis also revealed evidence of the use of the "Augustrushedl23" Snapchat username and the "Musicalmuffin7.0@gmail.com" email account, which were responsible for the upload of child pornography reported to NCMEC in May 2021 as described above.  This confirms NEWMAN's role in the distribution of that child pornography video.

13.    Based on the above, there is probable cause to believe that NEWMAN knowingly received, distributed, and possessed child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B) beginning on at least May 28, 2021.

## FBI INVESTIGATION (2024)

14.     The FBI became involved in a separate investigation of NEWMAN on or about April 18, 2024, when FBI agents in Illinois arrested an individual, "P.G.," for the attempted enticement of a minor. A review of P.G.'s phone located a Telegram conversation that P.G. was having with another individual, "D.D.," in which P.G. and D.D. discussed raping children. Telegram is an encrypted cloud-based internet messaging service that allows users to exchange messages, share files, and hold video calls. Telegram is widely known in the law enforcement community as a platform on which individuals receive and distribute child pornography.

15.     On or about April 23, 2024, an Online Covert Employee (OCE) messaged D.D. via Telegram, posing as a like-minded pedophile. During the ensuing conversation, D.D. claimed that he was sexually abusing his niece. D.D. sent the OCE photographs of an approximately 10-year-old female (now identified as VICTIM 1) that D.D. claimed was his niece. These include:

    a.  IMG_20240614_92353_974.jpg and IMG_20240611_082148_079.jpg:

        These photographs depict an approximately 10-year-old female (now identified as VICTIM 1) on a bed wearing dark unicorn pants and a blue long-sleeved shirt.  An adult male (now identified as NEWMAN) is lying on his back on the bed with his legs spread open. VICTIM 1 is holding NEWMAN's erect penis in her hands. A dresser and what appears to be a television can be seen in the background of the photographs.

    b.  IMG_20240611_084740_398.jpg:

        This photograph was taken in front of a white paneled door with a gray shoe organizer hanging from it. The photograph depicts VICTIM 1 wearing a pink romper with black Nike sandals and a backpack.

16.    Based on my training and experience, IMG_20240614_92353_974.jpg and IMG_20240611_082148_079.jpg constitute child pornography as defined by 18 U.S.C. § 2256(8).

17.    Using information associated with the photograph, open sources, and other methods, agents tentatively identified the minor female as VICTIM 1, with a residence in Corning, New York, at which point investigative leads were sent to FBI Corning.  Using information provided by the Corning Painted Post School District, I was able to confirm that VICTIM 1 was a student in the district and that she lived at a particular residence in Corning. Using open-sources, I located interior photographs of VICTIM 1's home and confirmed that the photographs distributed to the OCE depicting VICTIM 1 were in fact taken in her home.

18.    I also obtained records from the New York State Department of Motor Vehicles and the New York State Sex Offender Registry, both of which confirm that RYAN NEWMAN resides in VICTIM 1's home.  In fact, NEWMAN registered VICTIM 1's home as his official address for the New York State Sex Offender Registry.

19.    On July 3, 2024, I interviewed VICTIM 1's mother, Witness 1.  Witness 1 confirmed that NEWMAN was her boyfriend, and that NEWMAN resided at her home with VICTIM 1 in Corning.  I showed Witness 1 photographs depicting VICTIM 1 that were distributed to the OCE on Telegram. Witness 1 identified VICTIM 1 in each of the photographs and reported that the photograph depicting VICTIM 1 in the pink romper and black Nike sandals was taken at her home on her first day of school in September 2023.  I then showed Witness 1 a sanitized version of one of the child pornography photographs depicting VICTIM 1 holding NEWMAN's penis (NEWMAN's face is not visible in the photograph and his penis was cropped out when Witness 1 viewed it).  Witness 1 confirmed

6

that the photograph depicted VICTIM 1 in an upstairs bedroom of her home.  Witness 1 further confirmed that NEWMAN was the only male who would have had access to VICTIM 1 in order to take such a photo.   VICTIM 1 was 10 to 11-years-old when the photos were taken.

20.     Also on July 3, I interviewed NEWMAN at his place of employment. NEWMAN initially claimed to have no knowledge of why the FBI wished to speak with him, at which point I informed NEWMAN that the FBI was in possession of photos that showed him engaging in sexual activities with a child. After some discussion, NEWMAN acknowledged sexually abusing VICTIM 1 on a "handful" of occasions in his bedroom at VICTIM 1's home. When pressed, NEWMAN estimated that he sexually abused VICTIM 1 on five to ten occasions. NEWMAN admitted to fondling VICTIM 1's genitalia and to performing oral sex on VICTIM 1.  NEWMAN also stated that VICTIM 1 touched his penis and performed oral sex on him.

21.     When asked, NEWMAN admitted that he produced photographs and videos of himself engaged in sexual acts with VICTIM 1, and that he distributed the files on Telegram.  NEWMAN could not recall to whom he sent the files but admitted to sending them to a group of people, rather than one single person. When asked how he found this group, NEWMAN stated that he would search terms such as "incest" to locate individuals with similar interests. According to NEWMAN, these groups did not last very long as they were often taken down by Telegram. When asked, NEWMAN indicated that he produced multiple such photos of VICTIM 1. When pressed for an exact number, NEWMAN stated "tens to twenties . . . not hundreds."  NEWMAN indicated that the abuse took place after September 2023, when he moved in with VICTIM 1 and her mother.  VICTIM 1 would have

been 10 years old during this time.

22.     NEWMAN was shown a sanitized version of one of the photographs depicting VICTIM 1 holding his penis (NEWMAN's penis was cropped out of the photo). I asked NEWMAN if he could recall what VICTIM 1 was doing in the portion of the photograph that was cropped out.  NEWMAN stated that VICTIM 1's hands were on his penis.

23.     NEWMAN acknowledged still having Telegram on his phone, offered to access his Telegram account, and provided agents with his login credentials. NEWMAN was asked for consent to search his cell phone, which he had on his person and readily produced for agents. I also informed NEWMAN that WITNESS 1 had given agents his laptop computer and tablet and requested permission to search those devices.  NEWMAN agreed and assisted with the completion of the consent form by providing identifying information for the devices.  NEWMAN's devices are pending a forensic examination.

24.     On July 4, 2024, VICTIM 1 was forensically interviewed.  VICTIM 1 appeared timid and hesitant throughout the interview.  As substantive questions were asked, VICTIM 1 would sometimes pause for significant periods before answering.  VICTIM 1 did not disclose any sexual abuse by the defendant or anyone else.  VICTIM 1 abruptly ended the interview, stating that she did not feel comfortable and asked that the interview stop.  Based on VICTIM 1's demeanor and request, the interview was ended.  A follow up interview of VICTIM 1 will be attempted in the near future.

25.     On July 5, 2024, I interviewed Witness 2, one of NEWMAN's co-workers with whom NEWMAN worked on July 3.  Witness 2 contacted law enforcement after NEWMAN told Witness 2 that he had exploited VICTIM 1.  Witness 2 reported that NEWMAN gave her a ride home from work on July 4, 2024, following their overnight shift.  Witness 2 reported

that during the ride, NEWMAN confided in her that the FBI had visited him at work earlier in their shift (on July 3) and took his phone. According to Witness 2, NEWMAN stated that he was afraid he was "going to do hard time in prison" for taking graphic photos of VICTIM 1 and sending them "across the world" via Telegram. NEWMAN told Witness 2 that he was "not smart enough to change the background in the pictures so it was not his house in the background." NEWMAN told Witness 2 how he had previously gotten into trouble for "trolling" for underage girls on the internet and receiving pictures from them, and that there was "no excuse" for what he did to VICTIM 1.

## CONCLUSION

26.    Based on the foregoing, I respectfully submit that there is probable cause to believe that NEWMAN did knowingly produce, distribute, and possess child pornography in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B).


CHRISTINA T. PEKLAK
Special Agent
Federal Bureau of Investigation


Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __11__ day of July, 2024.

Marian W. Payson

HON. MARIAN W. PAYSON
United States Magistrate Judge

9

# EXHIBIT 2

AO 93 (Rev. 11/13) Search and Seizure Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

The Subject Devices as described in Attachment A-1; the Subject Snapchat Account as described in Attachment A-2; the Subject Gmail Accounts as described in Attachment A-3; and electronically stored information related to Telegram, which is concealed through technological means, as described in Attachment A-4.

Case No. 24-MJ- 4097
**(Filed Under Seal)**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer:

An application by a federal law enforcement officer requests the search of the following person or property located in the Western District of New York or elsewhere *(identify the person or describe the property to be searched and give its location)*:    The Subject Devices as described in Attachment A-1; the Subject Snapchat Account as described in Attachment A-2; the Subject Gmail Accounts as described in Attachment A-3; and electronically stored information related to Telegram, which is concealed through technological means, as described in Attachment A-4.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

*See* Attachments B-1, B-2, B-3, and B-4 (Information to be Seized), which are incorporated by reference as if fully set forth herein, all of which are evidence, contraband, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251(a); 2252A(a)(2)(A); and 2252A(a)(5)(B).

**YOU ARE COMMANDED** to execute this warrant on or before _____August 6, 2024_____
                                                                                              *(not to exceed 14 days)*
☐  in the daytime 6:00 a.m. to 10:00 p.m.     ☒  at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  Hon. Marian W. Payson
                                                                                                                                          *(United States Magistrate Judge)*

☒  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☒  for  30  days *(not to exceed 30).*     ☐  until, the facts justifying, the later specific date of_____.

Date and time issued:  July 23, 2024 at 2:15 p.m.                    *Marian W. Payson*
                                                                                                        *Judge's signature*

City and State:  Rochester, New York                              MARIAN W. PAYSON
                                                                                    UNITED STATES MAGISTRATE JUDGE
                                                                                            *Printed name and Title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
                                        *Executing officer's signature*


_____
                                        *Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

STATE OF NEW YORK  )
COUNTY OF MONROE  )    SS:          24-MJ-4097
CITY OF ROCHESTER  )

I, CHRISTINA PEKLAK, being duly sworn, depose and state:

1.     I have been a Special Agent of the FBI since 2007, and am currently assigned to the Corning, New York, Resident Agency. As a Special Agent of the FBI, I am responsible for investigating the production, distribution, receipt, and possession of child pornography. I have been involved in hundreds of child pornography and child exploitation investigations and have seen thousands of images of child pornography as defined by 18 U.S.C. § 2256(8).

2.     I have been involved in an investigation of RYAN M. NEWMAN involving the production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). The investigation led to NEWMAN's arrest on July 12, 2024. The allegations involve the ongoing sexual abuse of an identified minor, Victim 1. I am fully familiar with the evidence that supports the above referenced charges and prepared Criminal Complaint No. 24-MJ4093-MWP, which is pending before this Court. The filed Criminal Complaint is attached as EXHIBIT 1. The factual allegations contained in the Criminal Complaint are incorporated as if fully set forth in this affidavit.

3.     I submit this affidavit in support of a warrant to search the Subject Devices as described in Attachment A-1; the Subject Snapchat Account as described in Attachment A-2; the Subject Gmail Accounts as described in Attachment A-3; and electronically stored

information related to Telegram, which is concealed through technological means, as described in Attachment A-4.

    4.    The SUBJECT DEVICES are in the custody of the FBI in the Western District of New York and are therefore subject to search pursuant to Rule 41 of the Federal Rules of Criminal Procedure. They include:

    a.  Device #1: A Samsung Galaxy Z Fold 5 cellular telephone, with serial number RFCX20D8117;

    b.  Device #2: A Samsung Galaxy Tablet S9 Ultra with serial number R52X2074ZHR;

    c.  Device #3: A Lenovo IdeaPad Slim 3 Laptop;

    d.  Device #4: A 64 GB SanDisk MicroSD card stamped with 32160C8H201F and adapter; and

    e.  Device #5: A 32GB SanDisk thumb drive stamped with BM220358356W.

    5.    The SUBJECT Snapchat Account to be searched is: "augustrushed123" that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA 90405.

    6.    The SUBJECT Gmail accounts are: musicalmuffin7.0@gmail.com and reptarroar2020@gmail.com that are stored at premises owned, maintained, controlled, or operated by Google, LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

    7.    This Court has jurisdiction to issue a warrant for the Snapchat and Gmail accounts because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711(3)(A)(i).  See 18 U.S.C. § 2703(d).  Specifically, the Court is a "district court of the

United States (including a magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

8.      The electronically stored information related to Telegram is concealed through technological means and can therefore only be accessed directly from the SUBJECT DEVICES on which the Telegram application is located.

9.      The evidence to be searched for and seized from each of the above-described devices and accounts is described in Attachments B-1 through B-4.

10.     This affidavit is based on my personal knowledge and observations, my training and experience, conversations that I have had with other law enforcement officers and witnesses, and my review of documents, reports, records, and digital evidence gathered through the investigation of this case. Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth the facts that I believe are relevant to establish probable cause to support the requested search warrant.

<u>Probable Cause for the SUBJECT DEVICES</u>

11.     As explained in Exhibit 1, NEWMAN is a Level 3 registered sex offender with a 2012 conviction for child pornography crimes in New York State. The current investigation has revealed that NEWMAN was involved in the ongoing sexual abuse and production of child pornography of Victim 1, a 10 to 11-year-old female between 2023 and 2024, and had actively received, distributed, and possessed other child pornography since at least 2021.

12.     As summarized in Exhibit 1, I spoke with Victim 1's mother, Witness 1, on July 3, 2024. Witness 1 provided consent to search the residence she shared with NEWMAN,

3

and at that time, Witness 1 told me that NEWMAN had a cell phone (Device #1), tablet (Device #2) and laptop computer (Device #3). According to Witness 1, NEWMAN would likely have Device #1 on his person or in his locker at work. Witness 1 then identified and located Device #2 and Device #3 (Device #3 was in a computer bag) in the shared residence and provided both items to me. These items have remained in FBI custody since July 3, 2024.

13.      As explained in Exhibit 1, NEWMAN admitted to me on July 3, 2024, that he used his cellular phone and a Telegram account to produce child pornography depicting Victim 1 and distribute it to individuals that he interacted with in certain online groups. NEWMAN informed me that he engaged in this activity using an old cellular telephone and had since deleted the content depicting Victim 1. NEWMAN upgraded his phone to Device #1 but acknowledged having transferred the remaining data from the old phone to Device #1. NEWMAN provided consent to search Device #1, which he had on his person during the time of the interview.

14.      I also informed NEWMAN that WITNESS 1 had given me Device #2 and Device #3 earlier that day. I requested NEWMAN's permission to search those devices also. NEWMAN agreed and assisted with the completion of the consent form by providing identifying information for the devices.

15.      On or about July 5, 2024, and pursuant to NEWMAN's consent, I performed a digital extraction of Device #1. I reviewed the results of the extraction and did not immediately identify files consistent with child pornography. I did locate a folder labeled "Telegram," however the folder did not appear to house any image or video files, which is consistent with the information provided by NEWMAN. Of note, this particular extraction

method would not acquire the contents of a Telegram account and would likely not locate deleted files and/or information regarding those files. This information can be obtained through a full forensic examination, which will be performed by the Regional Computer Forensics Lab (RCFL).

16.     On July 9, 2024, I was conducting an inventory of the items obtained from NEWMAN's person and residence. While doing so, I located the SD card (Device #4) and thumb drive (Device #5) in the computer bag provided by Witness 1.

17.     Each of the devices has remained in the custody of the FBI since they were seized.  Based on NEWMAN's history, the information above and in Exhibit 1, and my training and experience, I believe that the SUBJECT DEVICES are likely contain evidence, fruits and instrumentalities of violations of 18 U.S.C. §§ 2251(a); 22252A(a)(2)A); and 2252A(a)(5)(B), as described in Attachment B-1.

18.     This is because individuals like NEWMAN, who have a demonstrated history of child pornography activity, often use multiple devices to produce, receive, possess, and distribute child pornography. Despite individuals' attempt to delete contraband (or belief that they have deleted it), remnants of child pornography, such as file titles, web paths, jump lists, cache files, and lnk files, can often be located through full forensic examinations. Even where actual child pornography is not located, other evidence, such as NEWMAN's installation of Telegram on Device #1, can be located, which can corroborate other evidence, and in this case, corroborates NEWMAN's confession.

Probable Cause for the SUBJECT SNAPCHAT and GMAIL ACCOUNTS

19.    As explained in Exhibit 1, NEWMAN used the SUBJECT SNAPCHAT ACCOUNT with associated GMAIL ACCOUNT (musicalmuffin7.0@gmail.com) in connection with a May 2021, upload of child pornography to SNAPCHAT as reported by NCMEC. The NYSP did not obtain search warrants for either of these accounts and NEWMAN was not arrested on state child pornography charges related to this conduct until 2024, a few months prior to his federal arrest. The NYSP searched NEWMAN's Samsung phone, which was taken from NEWMAN's person during that investigation. Forensic analysis of NEWMAN's phone revealed that the phone was used to access the SUBJECT GMAIL ACCOUNT reptarroar2020@gmail.com, to send and receive emails related to child pornography. For example, on one occasion the reptarroar2020@gmail.com account emailed another individual asking: "what ages for teens?," to which the other individual replied: "all." Sexually suggestive images of an apparent/possible minor in undergarments were then exchanged between reptarroar2020@gmail.com and the other user.

20.    It is unknown if these accounts were disabled by Snapchat or Google during the intervening time. Snapchat is rarely responsive to questions by law enforcement, and it has been my experience, and the experience of other law enforcement officers with whom I have had conversations, that the only way to determine if account content exists is to serve a search warrant.

21.    Based on my training and experience, social media providers, such as Snapchat, and email providers such as Google are inconsistent with respect to their retention of data after a submission to NCMEC, although it is the policy of many such companies to

6

delete the offending accounts. I am aware of instances in which social media providers have retained data, to include subscriber data, for extended periods of time. I am also aware that even if social media companies delete an account, they can retain information related to a NCMEC submission, to include records related to their report to NCMEC, that can be used at trial.

22.    Because NEWMAN remained out of custody until 2024 following his 2021 upload of child pornography to Snapchat, and because Snapchat and Google likely have retained at least some information concerning the SUBJECT ACCOUNTS, such as subscriber data and the original NCMEC cybertip, there is probable cause to believe the evidence as described in Attachments B-2 and B-3, are currently present in the SUBJECT SNAPCHAT and GMAIL ACCOUNTS.

**Probable cause to remotely access the SUBJECT TELEGRAM ACCOUNT**

23.    As explained in Exhibit 1, NEWMAN admitted that he used Telegram to distribute child pornography depicting Victim 1 and that he still had Telegram installed on at least one of the SUBJECT DEVICES (which I also observed during my cursory search on his consent). Therefore, there is probable cause to believe the evidence as described in Attachment B-4 will be located on Telegram accounts used by NEWMAN.

24.    Telegram is an internet-based messaging and social-media application for smartphones, tablets, and computers. Users can transmit messages, photos, videos, and other types of files with one another. Users can also create and participate in "groups," which allow up to 200,000 users to exchange messages and files, including photos and videos.

25.     Telegram uses encryption properties to foster privacy and security in messaging. The companies that control Telegram are not based in the United States, and Telegram does not respond to process issued by United States law enforcement agencies. According to the "Frequently Asked Questions" section of its website, Telegram does not process any requests related to illegal content within private group chats. In addition, the "Frequently Asked Questions" page also states that Telegram deliberately maintains data across multiple nations to make it impossible for a single government to compel access to user data. It stores cloud chat data in multiple data centers around the world that are controlled by different legal entities spread across different jurisdictions. Telegram states that, as a result, several court orders from different jurisdictions are required to force it to provide any data. As of July 18, 2024, the Telegram website states that it has never disclosed user information to governments, making it an ideal platform for individuals engaged in the sale, receipt, and distribution of child pornography.

26.     Because Telegram uses technological means to deliberately conceal the jurisdiction where its information is located, law enforcement has no means of preserving the contents of Telegram accounts, or securing the content of Telegram accounts through search warrants or other legal process. Accordingly, Telegram is subject to the type of remote search requested by this warrant pursuant to Federal Rule of Criminal Procedure 41(b)(6)(A).

27.     Since NEWMAN admitted that he used Telegram to distribute child pornography of Victim 1, and communicate with other like-minded individuals about child exploitation, there is probable cause to believe that evidence of NEWMAN's

8

communications and likely the contents of his Telegram account can be seized by logging into his account directly from his devices. This is the only way in which this information can be searched and seized.

## CONCLUSION

28.     Based upon the forgoing, there is probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B) as described in Attachments B-1 through B-4, are currently located within the Subject Devices as described in Attachment A-1; the Subject Snapchat Account as described in Attachment A-2; the Subject Gmail Accounts as described in Attachment A-3; and electronically stored information related to Telegram, which is concealed through technological means, as described in Attachment A-4.

CHRISTINA PEKLAK
FBI Special Agent

Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July  23 , 2024.

MARIAN W. PAYSON
United States Magistrate Judge

10